FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 APR 27 PM 4:18

LORETTA G. WHYTE
CLERK

# FELONY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**THIRD SUPERSEDING INDICTMENT FOR
CONSPIRACY, MAIL FRAUD AND WIRE FRAUD**

**07-169**

**SECT. L  MAG. 2**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 05-304 |
| v. | * | SECTION: "L" |
| BARRY S. SCHEUR | * | VIOLATIONS: 18 U.S.C. § 371 |
| ROBERT McMILLAN | | 18 U.S.C. § 1341 |
| RODNEY MOYER | * | 18 U.S.C. § 1343 |
| DANETTE BRUNO | | 18 U.S.C. § 2 |

\*   \*   \*

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material herein:

1. The Oath for Louisiana (The Oath) was a Health Maintenance Organization (HMO) which was engaged in the business of insurance in Louisiana. The Oath received insurance premiums from and on behalf of member individuals and groups (known as insureds) and, in turn, paid medical providers such as hospitals and physicians for services provided to the insureds.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

2. The Louisiana Department of Insurance (LDOI) regulated the business of insurance within the state of Louisiana, including the activities of HMOs such as The Oath, that were licensed to operate in Louisiana. As part of its regulatory oversight, the LDOI required all HMOs licensed in Louisiana to file financial reports each quarter and an annual financial statement. These reports described the financial condition of the HMO, including assets and liabilities, and contained specific information about accounts receivable and capital contributions. The LDOI required the reports to be filed by mail and to be signed by officials of the HMOs as true and correct, under penalty of perjury. The LDOI relied on the truthfulness, completeness and accuracy of these financial reports in order to regulate, monitor and assess the financial health of HMOs operating in Louisiana, and specifically therefore to ensure that HMOs had the capacity to pay claims from medical service providers for the care they provided to the HMO's insureds.

3. The LDOI reviewed HMOs' financial reports to assess the financial health of the HMO. When the financial reports indicated that an HMO was experiencing financial difficulties, the LDOI had several options available to try to remedy the financial difficulties, such as placing an HMO under administrative supervision, which is a period of intense monitoring designed to assist the HMO in regaining financial health; placing an HMO under rehabilitation, which is a period of restructuring the HMO in an attempt to regain financial health; and finally, placing an HMO in receivership, a process in which the HMO is liquidated, its assets sold and its liabilities paid to the extent possible.

4. Louisiana law required HMOs licensed in Louisiana to maintain at all times a minimum statutory net worth of $3 million and required them to report their net worth in the quarterly and annual financial reports. The LDOI relied on the reported net worth as an important

indicator of the financial health of the HMO, and specifically therefore to ensure that the HMO had the capacity to pay claims from medical service providers for the care they provided to the insureds.

### History of The Oath for Louisiana

5. In approximately January 2000, defendant **BARRY S. SCHEUR**, a health care consultant from Massachusetts, took control of a Louisiana licensed HMO called Southeastern Medical Alliance (SMA). The previous owners of SMA were a group of hospitals who transferred ownership to the new owner. Defendant **SCHEUR** renamed SMA "The Oath for Louisiana." The Oath's ultimate parent company was an entity called Venture Health Partnership Group, LLC (VHPG, LLC) headquartered in Massachusetts.

6. The Oath was managed by Scheur Management Group, Inc. (SMG), a Delaware corporation which was owned by defendant **SCHEUR** and headquartered in Massachusetts. SMG conducted healthcare consulting business throughout the United States, including the Eastern District of Louisiana. The Oath paid SMG approximately $200,000 to $350,000 per month for management services, typically by wire transfer from an Oath bank account in New Orleans, Louisiana to an SMG bank account in Massachusetts.

7. The previous owners of The Oath provided capital contributions sufficient to ensure that The Oath had a net worth above the required statutory minimum of $3 million at the time of transfer. However, some months later, by approximately September of 2000, The Oath was struggling financially and it became apparent to persons in management positions that The Oath might not be able to meet its $3 million statutory net worth requirement for the Third Quarter of 2000. The Oath's financial condition continued to deteriorate throughout the end of 2000 and into

2001. Nonetheless, The Oath filed quarterly and annual reports to the LDOI which falsely showed The Oath meeting or exceeding its minimum statutory net worth requirement of $3 million.

8. Throughout 2001, the LDOI became increasingly concerned about The Oath's financial condition, the manner in which it was being managed, and specifically The Oath's capacity to pay claims from medical service providers for the care they provided to The Oath's insureds. In approximately September of 2001, the LDOI placed The Oath under administrative supervision and took various actions designed to try to revive the HMO financially, including reducing the management fees paid to SMG. The Oath continued to struggle financially and in approximately April of 2002, the LDOI placed The Oath in receivership and began liquidation. The Oath's liabilities exceeded its assets by approximately $45 million, specifically, The Oath owed its medical service providers approximately that much money for unpaid claims.

9. From January 2000 until the LDOI placed The Oath in receivership in April 2002, The Oath paid SMG, defendant Scheur's company, approximately $6.1 million in management fees; thus the defendants continued to cause The Oath to pay SMG's management fees even after the defendants became aware that The Oath was failing to meet its minimum statutory net worth requirement of $3 million.

**Defendants**

10. Defendant **BARRY S. SCHEUR** was the owner, president, Chief Executive Officer (CEO) and a director of The Oath and its parent companies, Venture Health Partnership Group (VHPG) of Louisiana, Inc. and VHPG, LLC (later renamed The Oath, Inc.). His duties and responsibilities included overall management of The Oath, hiring and firing executives, reporting to

the LDOI and supervision of all financial and profitability aspects of The Oath. Defendant **SCHEUR** was also the owner, president and CEO of SMG.

11.   Defendant **ROBERT McMILLAN** was retained by SMG as a consultant to assist in managing The Oath. He held various positions including Vice President, Chief Operating Officer (COO) and Chief Financial Officer (CFO) of The Oath and was a Director of The Oath. Defendant **McMILLAN'S** duties and responsibilities included the management of The Oath's financial affairs, and the oversight of the accounting department and filing of financial reports with the LDOI.

12.   Defendant **RODNEY MOYER** was retained by SMG as a consultant to assist in managing The Oath. He held various positions including Executive Vice President of The Oath and was a Director of The Oath. Defendant **MOYER'S** duties and responsibilities involved participation in the overall operation of The Oath, including financial reporting to the LDOI.

13.   Defendant **DANETTE BRUNO** was employed by SMG as its controller. Her duties and responsibilities included managing the books and records for SMG and The Oath's parent companies Venture Health Partnership Group (VHPG) of Louisiana, Inc. and VHPG, LLC (later renamed The Oath, Inc.), as well as the consolidation of the financial statements of The Oath and its parent companies.

## COUNT 1

### A.   THE CONSPIRACY

14.   The allegations contained in paragraphs 1 through 13 of the General Allegations section of this indictment are realleged and incorporated by reference as though fully set forth herein.

15.   Beginning at least as early as in or about September 2000 and continuing through at least in or about April 2002, in the Eastern District of Louisiana and elsewhere, the defendants,

**BARRY S. SCHEUR, ROBERT McMILLAN, RODNEY MOYER, DANETTE BRUNO,** and others unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other to:

    a.    use, and cause to be used, the United States Mail and private and commercial interstate carriers in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in paragraph 19 of Count 2; in violation of Title 18, United States Code, Section 1341; and

    b.    transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals and sounds in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in Paragraph 19 of Count 2; in violation of Title 18, United States Code, Section 1343.

**B.**    **MANNER AND MEANS**

16.    The defendants and co-conspirators carried out the conspiracy in the following manner and through the following means, among others:

    a.    prepared and filed and caused to be prepared and filed with the LDOI materially false and misleading financial statements which fraudulently overstated The Oath's net worth by reporting as admitted assets non-existent and artificially inflated accounts receivable;

    b.    prepared and caused to be prepared materially false and misleading internal accounting books, records and memoranda of The Oath, which contained non-existent and artificially inflated accounts receivable, in order to fraudulently overstate The Oath's net worth;

    c.    prepared and filed and caused to be prepared and filed with the LDOI materially false and misleading financial statements which fraudulently overstated The Oath's net

worth by reporting cash payments to The Oath from its parent companies as capital contributions constituting admitted assets when, in truth and in fact, such reported cash payments were either loans or non-existent;

      d.    prepared and caused to be prepared and submitted to the LDOI materially false and misleading documents and correspondence which characterized cash payments to The Oath from its parent companies as capital contributions when, in truth and in fact, such cash payments were loans or non-existent;

      e.    prepared and caused to be prepared materially false and misleading internal accounting books, records and memoranda of The Oath, which characterized purported cash payments from The Oath's parent companies as capital contributions when, in truth and in fact, such payments were either loans or non-existent, in order to fraudulently overstate The Oath's net worth;

      f.    prepared and caused to be prepared materially false and misleading internal accounting books, records and memoranda of The Oath, which characterized a $1.2 million cash payment from The Oath to SMG as prepaid management fees and an account receivable when, in truth and in fact, that cash payment constituted the repayment of a loan to The Oath; and

      g.    prepared and caused to be prepared materially false and misleading corporate resolutions and a promissory note, which characterized a $1.2 million cash payment from The Oath to SMG as a loan from The Oath to VHPG, LLC when, in truth and in fact, that cash payment constituted the repayment of a loan to The Oath; and

      h.    prepared and caused to be prepared and submitted to the LDOI materially false and misleading documents and correspondence which characterized a $1.2 million cash payment

from The Oath to SMG as a loan from The Oath to VHPG, LLC when, in truth and in fact, that cash payment constituted the repayment of a loan to The Oath.

## C. **OVERT ACTS**

17.  In furtherance of the conspiracy and to achieve the objects thereof, the defendants and co-conspirators committed and caused to be committed, in the Eastern District of Louisiana and elsewhere, at least one of the following overt acts, among others:

    a.  mailing The Oath's materially false and misleading Third Quarter 2000 financial report from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana on or about November 27, 2000;

    b.  wire transfer of $250,000 from First Bank & Trust in New Orleans, Louisiana to a VHPG, LLC account at Fleet Bank in Boston, Massachusetts on or about February 26, 2001;

    c.  wire transfer of $1,200,000 from First Bank & Trust in New Orleans, Louisiana to a VHPG, LLC account at Fleet Bank in Boston, Massachusetts on or about February 26, 2001;

    d.  wire transfer of $650,000 from a VHPG, LLC account at Fleet Bank in Boston, Massachusetts to an Oath account at First Bank & Trust in New Orleans, Louisiana on or about February 27, 2001;

    e.  wire transfer of $800,000 from a VHPG, LLC account at Fleet Bank in Boston, Massachusetts to an Oath account at First Bank & Trust in New Orleans, Louisiana on or about February 27, 2001;

   f.  mailing The Oath's materially false and misleading Annual 2000 financial report from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana on or about March 8, 2001;

   g.  mailing bank records reflecting the wire transfers described in paragraphs d and e above from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana on or about March 9, 2001;

   h.  wire transfer of $1,200,000 from an Oath account at Whitney Bank in New Orleans, Louisiana to an SMG account at Fleet Bank in Boston, Massachusetts on or about April 25, 2001;

   i.  wire transfer of $600,000 from an SMG account at Fleet Bank in Boston, Massachusetts to First Bank & Trust in New Orleans, Louisiana on or about April 26, 2001;

   j.  wire transfer of $600,000 from an SMG account at Fleet Bank in Boston, Massachusetts to First Bank & Trust in New Orleans, Louisiana on or about April 26, 2001;

   k.  mailing The Oath's materially false and misleading First Quarter 2001 financial report from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana on or about July 12, 2001;

   l.  mailing The Oath's materially false and misleading Second Quarter 2001 financial report from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana on or about September 17, 2001;

   m.  in or about September 2001, the creation of a materially false and misleading promissory note dated April 25, 2001, which characterized a $1.2 million cash payment from The Oath to SMG as a loan from The Oath to VHPG, LLC;

    n.    in or about September 2001, the creation of a materially false and misleading corporate resolution of The Oath dated April 25, 2001, which characterized a $1.2 million cash payment from The Oath to SMG as a loan from The Oath to VHPG, LLC;

    o.    in or about September 2001, the creation of a materially false and misleading corporate resolution of VHPG, LLC dated April 25, 2001, which characterized a $1.2 million cash payment from The Oath to SMG as a loan from The Oath to VHPG, LLC;

    p.    faxing the promissory note, Oath corporate resolution and VHPG, LLC corporate resolution described in paragraphs m, n and o above from the offices of The Oath in New Orleans, Louisiana to the office of a law firm in Ohio on or about December 10, 2001;

    q.    e-mailing information about financial transactions involving The Oath from the offices of SMG in Massachusetts to the offices of a law firm in Ohio on or about January 2, 2002;

    r.    faxing information about financial transactions involving The Oath, and the promissory note, Oath corporate resolution and VHPG, LLC corporate resolution described in paragraphs m, n and o above, from the offices of a law firm in Ohio to the LDOI in Baton Rouge, Louisiana on or about January 28, 2002; and

    s.    faxing a letter from defendant **SCHEUR** containing information about financial transactions involving The Oath from the offices of SMG in Massachusetts to the LDOI in Baton Rouge, Louisiana on or about January 31, 2002.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

18. The allegations contained in paragraphs 1 through 12 of the General Allegations section and paragraphs 16 (a) and (b) of Count 1 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

19. Beginning at least as early as in or about September 2000 and continuing through at least in or about April 2002, in the Eastern District of Louisiana and elsewhere, defendants and others unknown to the grand jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and obtain money and property, specifically from The Oath, The Oath's insureds, and The Oath's medical service providers, by means of material false and fraudulent pretenses, representations and promises, by misleading the LDOI into believing that The Oath was meeting the statutorily required minimum net worth of $3 million, and thereby unlawfully enriching themselves through the continued operation of The Oath, specifically by continuing to collect premiums from the insureds and continuing to collect management fees from The Oath, during a time when The Oath was not meeting that statutorily required minimum net worth.

20. On or about November 27, 2000, in the Eastern District of Louisiana and elsewhere, the defendants, **BARRY S. SCHEUR, ROBERT McMILLAN, RODNEY MOYER**, and others unknown to the grand jury, for the purpose of executing the scheme and artifice to defraud, set forth in paragraph 19 above, did knowingly cause to be sent, delivered, and moved by the United States Postal Service The Oath's Third Quarter 2000 financial report mailed from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 3 – 6

21.     The allegations contained in paragraphs 1 through 13 of the General Allegations section, paragraphs 16 (c) through (h) of Count 1, and paragraph 19 of Count 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22.     On or about the dates specified in each count below, in the Eastern District of Louisiana and elsewhere, the defendants, **BARRY S. SCHEUR, ROBERT McMILLAN, RODNEY MOYER, DANETTE BRUNO**, and others unknown to the grand jury, for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 19 of Count 2, and attempting to do so, did knowingly cause to be sent, delivered, and moved by the United States Postal Service the items particularly described in each count below:

| COUNT | DATE | DESCRIPTION OF MAILING |
|---|---|---|
| 3 | March 8, 2001 | The Oath Annual 2000 financial report mailed from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana. |
| 4 | March 9, 2001 | Letter dated March 7, 2001 containing copies of bank records reflecting wire transfers into an Oath account mailed from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana. |
| 5 | July 12, 2001 | The Oath First Quarter 2001 financial report mailed from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana. |
| 6 | September 17, 2001 | The Oath Second Quarter 2001 financial report mailed from New Orleans, Louisiana to the LDOI in Baton Rouge, Louisiana. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 7 - 14

23. The allegations contained in paragraphs 1 through 13 of the General Allegations section, paragraphs 16 (c) through (h) of Count 1, and paragraph 19 of Count 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

24. On or about the dates specified in each count below, in the Eastern District of Louisiana and elsewhere, the defendants, **BARRY S. SCHEUR, ROBERT McMILLAN, RODNEY MOYER, DANETTE BRUNO,** and others unknown to the grand jury, for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 19 of Count 2, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, certain writings, signs, signals and sounds, as more particularly described in each count below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 7 | February 26, 2001 | Wire transfer of $250,000 from First Bank & Trust in New Orleans, Louisiana to a VHPG, LLC account at Fleet Bank in Boston, Massachusetts. |
| 8 | February 26, 2001 | Wire transfer of $1,200,000 from First Bank & Trust in New Orleans, Louisiana to a VHPG, LLC account at Fleet Bank in Boston, Massachusetts. |
| 9 | February 27, 2001 | Wire transfer of $650,000 from a VHPG, LLC account at Fleet Bank in Boston, Massachusetts to an Oath account at First Bank & Trust in New Orleans, Louisiana. |
| 10 | February 27, 2001 | Wire transfer of $800,000 from a VHPG, LLC account at Fleet Bank in Boston, Massachusetts to an Oath account at First Bank & Trust in New Orleans, Louisiana. |
| 11 | April 25, 2001 | Wire transfer of $1,200,000 from an Oath account at Whitney Bank in New Orleans, Louisiana to an SMG account at Fleet Bank in Boston, Massachusetts. |

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 12 | April 26, 2001 | Wire transfer of $600,000 from an SMG account at Fleet Bank in Boston, Massachusetts to First Bank & Trust in New Orleans, Louisiana. |
| 13 | April 26, 2001 | Wire transfer of $600,000 from an SMG account at Fleet Bank in Boston, Massachusetts to First Bank & Trust in New Orleans, Louisiana. |
| 14 | December 10, 2001 | Fax of the promissory note, Oath corporate resolution and VHPG, LLC corporate resolution, described in paragraphs 17m, n and o above, from the offices of The Oath in New Orleans, Louisiana to the offices of a law firm in Ohio. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

1.  The allegations of Counts 1 through 14 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 1341, 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853.

2.  As a result of the offenses alleged in Counts 1 through 14, defendants, **BARRY SCHEUR, RODNEY MOYER, ROBERT MCMILLAN and DANETTE BRUNO**, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 1341, 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853, any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341 and 1343.

If any of the above described property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Sections 1341, 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853.

A TRUE BILL:

_____
FOREPERSON

_____
JIM LETTEN, #8517
UNITED STATES ATTORNEY

_____
JAN MASELLI MANN, #9020
First Assistant United States Attorney
Chief, Criminal Division

_____
G. DALL KAMMER, #26948
Assistant United States Attorney

_____
JOSEPH A. CAPONE
Trial Attorney, Fraud Section
U.S. Department of Justice, Criminal Division

New Orleans, Louisiana
April 27, 2007

FORM OBD-34
APR. 91

No. _05-304 "L"_

# UNITED STATES DISTRICT COURT

_Eastern_ District of _Louisiana_

_Criminal_ Division

## THE UNITED STATES OF AMERICA

vs.

_Barry S. Scheur, Robert McMillan,_
_Rodney Moyer, Danette Bruno_

## INDICTMENT

**THIRD SUPERSEDING INDICTMENT FOR CONSPIRACY, MAIL FRAUD AND WIRE FRAUD**

VIOLATION:  18 U.S.C. § 371
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 2

A true bill.

_____
Foreman

Filed in open court this _____

day of _____ A.D. 2007.

_____
Clerk

Bail, $ _____

_____
G. DALL KAMMER, Assistant United States Attorney