# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET** |
| **VERSUS** | * | **NO. 07-169** |
| **BARRY S. SCHEUR, ET AL.** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court are Defendant Barry Scheur's Motion for Judgment of Acquittal, or, in the Alternative, Motion for a New Trial (Rec. Doc. 319), and Defendant Robert McMillan's Motion for Acquittal (Rec. Doc. 313) and Motion for a New Trial (Rec. Doc. 314). For the following reasons, the motions are DENIED.

## I.      BACKGROUND

The Court has previously set forth in detail the facts and procedural history of this case leading up to the jury trial which began on April 28, 2008. Accordingly, for purposes of this Order, the Court will assume a familiarity with its earlier rulings in this case. *See United States v. Scheur*, 547 F. Supp. 2d 580 (E.D. La. 2008); *United States v. Scheur*, Crim A. No. 07-169, 2008 WL 490339 (E.D. La. Feb. 20, 2008); *United States v. Scheur*, Crim. A. No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007); *United States v. Scheur*, Crim. A. No. 05-304, 2007 WL 1063301 (E.D. La. Apr. 3, 2007).

Shortly before the date of trial, Defendant Rodney Moyer pled guilty to Count One of the Third Superseding Indictment, which charges the Defendants with knowingly and willfully

1

combining, conspiring, confederating, and agreeing with each other to devise a scheme

> to defraud and obtain money and property, specifically from The Oath, The Oath's insureds, and The Oath's medical service providers, by means of material false and fraudulent pretenses, representations and promises, by misleading the LDOI into believing that The Oath was meeting the statutorily required minimum net worth of $3 million, and thereby unlawfully enriching themselves through the continued operation of The Oath, specifically by continuing to collect premiums from the insureds and continuing to collect management fees from The Oath, during a time when the Oath was not meeting the statutorily required minimum net worth.

(Third Superseding Indictment ¶ 19.)

On April 28, 2008, the jury trial began as to the three remaining Defendants—Barry Scheur, Robert McMillan, and Danette Bruno.  On May 8, 2008, after both parties had made their closing arguments, the Court delivered the jury charges and the jury retired to deliberate. On May 12, 2008, the jury returned its verdict, finding Defendant Barry Scheur Guilty as to Counts 1, 2, 5, 6, and 11 through 14; Defendant Robert McMillan Guilty as to Counts 1, 5, and 14; and Defendant Danette Bruno Not Guilty as to all Counts.

## II.   PRESENT MOTIONS

Defendants Barry Scheur and Robert McMillan have now moved for a judgment of acquittal or, in the alternative, for a new trial.  The Court will address each of the Defendants' motions in turn.

### A.   Defendant Barry Scheur's Motion for Judgment of Acquittal, or, in the Alternative, Motion for a New Trial

Defendant Barry Scheur has moved for a judgment of acquittal on all counts, or, in the alternative, for a new trial.  Scheur advances eight theories in support of his motion for acquittal or a new trial: (1) statute of limitations; (2) insufficiency of the Indictment; (3) improper

testimony; (4) due process (competency and special needs); (5) constructive amendment of the Indictment; (6) improper prosecutorial comment on the Defendants' decisions not to testify; (7) denial of requested jury instructions; and (8) insufficient evidence.

First, Scheur argues that the filing of the Third Superseding Indictment in this case was barred by the statute of limitations.  Although Scheur concedes that the first three indictments were timely filed, he argues that the Third Superseding Indictment was filed in violation of the statute of limitations pursuant to Title 18, United States Code, Sections 3282 and 3288.

Second, Scheur argues that the weight of the evidence did not support the issuance of the Third Superseding Indictment.  Specifically, Scheur contends that the Indictment fails to allege that the Defendants defrauded anyone other than the LDOI.

Third, Scheur argues that the Court allowed improper expert testimony to be introduced at trial and that the Court committed error when it refused to issue the Defendants' requested curative jury instruction.  Scheur contends that witnesses Alan Parker, John Black, and Roland Sheehan, among others, were permitted to testify as experts when in fact they were only fact witnesses.  According to Scheur, the above witnesses' testimony related to the National Association of Insurance Commissioners ("NAIC") guidelines or the practices of other states. Scheur contends that their testimony severely undermined his defense, which he claims was based largely on the fact that Louisiana had not codified the NAIC guidelines at the time of the events in question.

Fourth, Scheur argues that the Court violated his due process rights by finding that he was competent to go to trial and denying him reasonable accommodations for his special needs or a continuance prior to the scheduled trial date.  Scheur contends that his blindness rendered

him incompetent to stand trial because he was unable to assist his counsel in his defense regarding certain financial documents related to the trial.  He also contends that the Court erred in not granting his request for certified Braille translations of all documents produced by the Government in discovery.

Fifth, Scheur argues that the Court inappropriately permitted the Government to constructively amend the Indictment during trial.  Specifically, Scheur contends that the testimony of Kenneth Keller constituted a constructive amendment of the Indictment.  Keller testified as a representative of Tenet Health Systems, Inc., one of The Oath's medical service providers.  Because Keller testified that Scheur had misrepresented The Oath's financial condition to him and to Tenet Health Systems, Scheur argues that the Government amended the Indictment by attempting to show that The Oath directly defrauded its medical service providers and insureds.  According to Scheur, the Government could only introduce testimony that the Defendants made misrepresentations directly to the LDOI in order to defraud the medical service providers.

Sixth, Scheur contends that he is entitled to a new trial on the grounds that the prosecutor's remarks during closing argument violated his constitutional rights under the Fifth Amendment.  During closing arguments, the prosecutor remarked that "[n]ot one of these defendants is stepping up and saying that they did anything wrong."  In addition, Scheur argues that the Court's curative instruction failed to remedy the constitutional violation.  Scheur also contends that the prosecutor again violated the Defendants' due process rights when he rephrased his argument, stating that "[t]here is blame being placed at the face of everybody in this courtroom but there's no responsibility at all being taken on behalf of the defendants."

4

Seventh, Scheur contends that the Court committed reversible error by refusing to issue several of the Defendants' requested jury instructions.  In particular, Scheur contends that the Court should have issued instructions regarding Louisiana's non-codification of the NAIC guidelines, the definition of an admitted asset, and the legal significance of collective knowledge.

Eighth, Scheur argues that the evidence was insufficient to sustain his conviction, or, in the alternative, that the jury's verdict goes against the great weight of the evidence.  Specifically, Scheur contends that the evidence was insufficient to support a conviction as to Count 14, which charged the Defendants with wire fraud in furtherance of the conspiracy related to certain financial documents that were faxed from The Oath to the offices of a law firm in Ohio in December 2001.  Scheur contends the charge is unsupported by the evidence because The Oath had already been placed under administrative supervision by December 2001 and the alleged conspiracy had already reached completion.

### B.    Defendant Robert McMillan's Motion for Judgment of Acquittal and Motion for a New Trial

Defendant Robert McMillan has also moved for a judgment of acquittal or a new trial.  In support of his motion for a judgment of acquittal, McMillan argues that the Government failed to introduce any evidence that he had the specific intent to defraud The Oath, The Oath's insureds, and The Oath's medical service providers.  For support, McMillan cites the testimony of Rodney Moyer, in which Moyer stated that the Defendants' misrepresentations were not made out of a desire to commit fraud but were instead made out of a desire to turn the business around. Therefore, McMillan argues that he should be granted a judgment of acquittal because the Government failed to show that he had the specific intent to defraud anyone other than the

LDOI.

In support of his motion for a new trial, McMillan argues that the weight of the evidence does not support the jury's verdict.  In addition to the same arguments set forth in his motion for acquittal, McMillan also contends that the Government failed to introduce any evidence linking him to the charges in Count 14, which involved certain financial documents faxed from The Oath to an Ohio law firm in December 2001.  Because the Oath had already been placed in receivership by that date, McMillan contends that the fax could not have been in furtherance of the alleged conspiracy.  McMillan further claims that, even if the fax were in furtherance of the conspiracy, the Government presented no witness or evidence that linked him to the events described in Count 14.

## III.   LAW & ANALYSIS

The Federal Rules of Criminal Procedure provide that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29.  The Fifth Circuit has explained that the correct analysis is "whether a rational trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt."  *United States v. Davis*, 226 F.3d 346, 354 (5th Cir. 2000).  In reviewing the jury's verdict, the court must consider "the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in the light most favorable to the Government."  *United States v. Garcia*, 242 F.3d 593, 596 (5th Cir. 2001).

The Rules of Criminal Procedure further permit courts to vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed.R.Crim.P. 33.  The court must "balance the alleged errors against the record as a whole and evaluate the fairness of the trial."  *United States*

*v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988).  "Motions for a new trial are not favored, and are granted only with great caution."  *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997).  "The remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'"  *O'Keefe*, 128 F.3d at 898 (quoting *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996)).

    **A.**    **Defendant Barry Scheur's Motion for Judgment of Acquittal, or, in the Alternative, Motion for a New Trial**

       Defendant Barry Scheur advances eight grounds in support of his motion for a judgment of acquittal, or, in the alternative, for a new trial.  The Court will address each of Scheur's points in turn.

       **1.**    **Statute of Limitations**

       Scheur first argues that, although the first three indictments were timely filed, the Third Superseding Indictment should be dismissed because it was time-barred by the statute of limitations.  Title 18, United States Code, Section 3282 provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282.  Although Section 3288 provides that the Government may return a new indictment within six calendar months of the dismissal of a previous indictment, Scheur argues that the Indictment in the instant case cannot be "saved" by § 3288 because it is a wholly new indictment that impermissibly broadens the charges against the Defendants.  The Court, however, has already decided this issue.  *See United States v. Scheur*, Crim. A. No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007).  For the reasons outlined in

the Court's earlier opinion, the argument is without merit.

### 2.      Insufficiency of the Indictment

Second, Scheur argues that the Indictment is insufficient because it fails to allege that anyone other than the LDOI was defrauded by the Defendants' actions.  Again, the Court decided this issue prior to trial.  *See United States v. Scheur*, Crim. A. No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007).  For the reasons set forth in the Court's earlier opinion, this argument is without merit.

### 3.      Improper Testimony

Third, Scheur argues that the Court permitted expert testimony by fact witnesses, including Alan Parker, John Black, Roland Sheehan, and others.  Scheur contends that the Court erred by permitting these fact witnesses to offer expert opinions on general accounting practices despite the fact that the witnesses were not tendered as experts.  Scheur further argues that the Court committed error by declining to deliver Scheur's proposed curative instruction to the jury.

As an initial matter, it is worth noting that each of the witnesses at issue had significant professional experience in the field of insurance finance and each had a close professional relationship with The Oath of Louisiana.  In order to review the witnesses' testimony, it is important to consider the witnesses' professional experience in light of their relationship with The Oath.  Alan Parker was a CPA for 20 years before Scheur hired him to serve as interim CFO for The Oath of Louisiana.  Similarly, John Black worked as an insurance regulator and an independent financial consultant in the insurance industry for nearly twenty years before Scheur hired him to look into possible Medicare recoveries on behalf of The Oath.  Finally, Roland Sheehan worked as a CPA for almost thirty years and served as CFO for a Health Management

8

Organization in Louisiana before conducting an audit of The Oath on behalf of the LDOI prior to The Oath being placed in receivership.

In the course of their testimony, the above witnesses were at times called upon to explain the meaning of terms or practices that they referred to in their testimony in order to provide context for either their professional background or their account of events that occurred in relation to their work with The Oath.  In such limited circumstances, the Court permitted the witnesses to testify from their experience within the industry in order to give meaning and definition to their testimony in the context of their working relationship with The Oath.

In reviewing the testimony at issue, the Court finds that the witnesses did not offer expert opinions but merely provided appropriate limited testimony in order to clarify their testimony regarding The Oath.[1]  In such rare circumstances, the witnesses did not offer opinions based on "specialized knowledge" or expert analysis, but rather testified regarding readily observable facts and definitions necessary to provide appropriate context for their testimony.  Because the witnesses testified regarding relevant facts and did not offer expert opinions or expert testimony, no curative instruction was required.  Accordingly, the Court finds that this argument is without merit.

### 4.    Due Process (Competency and Special Needs)

Fourth, Scheur argues that the trial in this case violated his Due Process rights because he was not competent to stand trial and the Court committed error by denying his motion for a

---

[1] *See United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his

continuance shortly before trial.  Due to his blindness, Scheur contends that he was not

competent to stand trial because he was unable to assist his counsel in his own defense regarding

certain financial documents offered into evidence by the Government during trial.  Scheur further

contends that the Court erred in refusing to grant him a continuance prior to trial.  The Court has

already ruled on these issues.  *See United States v. Scheur*, 547 F. Supp. 2d 580, 585-86 (E.D.

La. 2008) (finding Scheur competent to stand trial and accommodating Scheur's special needs);

(Order, Rec. Doc. 237, Apr. 25, 2008) (denying motion for a continuance).[2]  For the reasons set

forth in the Court's earlier rulings, this argument is without merit.

### 5.    Constructive Amendment

---

expertise.").

[2] In the Court's earlier Order regarding Scheur's competency and special needs, the Court
noted:

> Notwithstanding the fact that Scheur has been blind since birth … he has
> led a very unique and successful professional life, both as a lawyer and a
> healthcare executive.   After graduating magna cum laude from Tufts
> University, Scheur received his law degree from Yale Law School.
> Scheur began his professional career by working for several law firms
> before accepting an in-house counsel position with a healthcare
> organization.    Then in 1988, Scheur formed his own healthcare
> management and consulting firm, The Scheur Management Group.  Over
> the years, Scheur has managed and served as a consultant for hundreds of
> health insurance plans.  Indeed, Scheur has touted himself as a 'managed
> care iconoclast' …. [M]any of the government's proposed exhibits are
> copies of documents from The Oath's own files, the contents of which it
> must be presumed Scheur has either previously devised a method of
> absorbing or ignored at his peril…. In sum, having dealt with the reality of
> not being able to see financial documents his entire professional career,
> but nevertheless having engaged in, and become an expert in, advising and
> running healthcare companies, Scheur simply cannot come to this Court
> on the eve of trial purporting to be incompetent on this ground.

*United States v. Scheur*, 547 F. Supp. 2d 580, 585-87 (E.D. La. 2008).

Fifth, Scheur argues that the Court erred in permitting the Government to constructively amend the Indictment during trial by eliciting testimony that Scheur had misrepresented The Oath's financial condition to Kenneth Keller, a representative of one of The Oath's medical service providers.  According to Scheur, the Government should have only been permitted to elicit testimony that the Defendants made misrepresentations directly to the LDOI—and not to The Oath's medical providers or its insureds.  Scheur further argues that the Court erred by not issuing Scheur's proposed curative instruction to the jury regarding the substance of Keller's testimony.

"It is a long established principle of our criminal justice system that, after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself."  *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984).  Constructive or implicit amendment occurs when the court, "through its instructions and the facts it permits in evidence, allows proof of an essential element of a crime on an alternative basis permitted by the statute but not charged in the indictment ...."  *United States v. Slovacek*, 867 F.2d 842, 847-48 (5th Cir. 1989).  For example, in *United States v. Mize*, the Fifth Circuit held that the trial court improperly permitted a constructive amendment when the indictment set forth only one basis for jurisdiction, the government proved a second, unrelated basis, and the court instructed the jury on the second basis.  756 F.2d 353 (5th Cir. 1985).

In the instant case, the Government charged the defendants with knowingly and willfully devising and intending to devise "a scheme and artifice to defraud and obtain money and property, specifically from The Oath, The Oath's insureds, and The Oath's medical service providers ...."  (Third Superseding Indictment ¶ 19.)  Kenneth Keller testified that he relied on

11

Scheur's representations concerning The Oath's financial condition in order to make significant business decisions on behalf of one of The Oath's medical service providers.  When asked whether it was important for Tenet to receive accurate and truthful information concerning the financial status of the HMOs with which it does business, Keller testified that it was "very important" and proceeded to explain why.  Such testimony does not constitute a constructive amendment of the Indictment.  Keller's testimony did not permit the Government to prove "an essential element of the crime by an alternate basis … not charged in the indictment."  *See Slovacek*, 867 F.2d at 847-48.  Rather, Keller's testimony is probative of whether the Defendants devised or intended to devise "a scheme and artifice to defraud and obtain money and property ... [from] The Oath's medical service providers."  (Third Superseding Indictment ¶ 19.) Accordingly, no curative instruction was necessary and Scheur's argument on this point is without merit.

### 6.     Prosecutorial Remarks During Closing Argument

Sixth, Scheur argues that the prosecutor violated Scheur's constitutional rights during closing arguments by commenting on Scheur's decision not to testify during the trial.  Scheur further contends that the Court's curative instruction was insufficient to remedy the constitutional violations.  Finally, Scheur argues that the prosecutor again violated the Defendants' constitutional rights when he attempted to clarify his statement after the Court's curative instruction.

Following the Defendants' closing arguments, the prosecutor stated in rebuttal:

> Ladies and Gentleman, over the past hour and 45 minutes you've heard a lot of outrage, a lot of outrage by the defendants in this case.  I submit to you you should be outraged.  You should be outraged at the actions of

> these defendants and what they did with this healthcare system… What you've seen from the defense here is attack, blame the Department of Insurance, blame Richard O'Shee, blame the accountants, blame the lawyers, blame the government. Not one of these defendants is stepping up and saying that they did anything wrong.

Trial Transcript, May 7, 2008, Morning Session, at 77. Immediately following the prosecutor's remarks, the Defendants moved for a mistrial or a judgment of acquittal and the Court denied the request. The Court issued the following curative instruction to the jury:

> Members of the jury, I specifically instructed you before that no defendant need testify, they need put on no evidence, they need not put on anything at all. It is always the government's burden to prove every essential element and the defendant need to prove nothing. So you're to disregard that last comment. The defendant need not say anything, so disregard that and we'll continue with the argument.

*Id.* at 78-79.

After the Court issued its curative instruction, the prosecutor attempted to rephrase and clarify his argument:

> Ladies and gentlemen, I misspoke. What I meant to say was here is that there is blame being placed at the [feet] of everybody in this courtroom but there's no responsibility at all being taken on behalf of the defendants. Okay. That's what was meant to be said here. The defense counsel, not the defendants, the defense counsel stepped up to this podium and blamed everybody in this courtroom. But not once did they explain to you, did they take responsibility for the actual items, the schemes in this case.

*Id.* at 79. When the jury was removed from the courtroom following closing arguments, counsel for the Defendants reurged their objections to the prosecutor's initial remarks. Counsel again moved for a mistrial but did not object to the prosecutor's clarification or the Court's curative instruction. In denying the reurged motion for a mistrial, the Court explained: "I feel that my curative instruction to the jury was appropriate, and I looked at the jury while I was giving it and

13

I felt that they understood the curative instruction and [were] able to disregard it, so I am going to deny the motion." *Id.* at 93.

The next morning, before the jury retired, defense counsel again reurged the motion for a mistrial, this time broadening it to include the prosecutor's remarks made after the Court's curative instruction.  Trial Transcript, May 8, 2008, Morning Session, at 30.  Counsel later put the motion on the record after the jury retired for deliberations.  *Id.*  The Court again denied the motion for a mistrial, noting that "I felt that the curative instruction was appropriate and I also felt that it was well received based on what I saw from the jury, the way they listened to it, and also the body language they displayed." *Id.* at 31.

It is well-settled that "[t]he Fifth Amendment prohibits a trial judge, a prosecutor, or a witness from commenting upon a defendant's failure to testify in a criminal trial." *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990) (citing *Griffin v. California*, 380 U.S. 609 (1965)). "The test for determining if a constitutional violation has occurred is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Lampton*, 158 F.3d 251, 260 (5th Cir. 1998) (quoting *Davis v. United States*, 357 F.2d 438, 441 (5th Cir. 1966)).  "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

In *United States v. Lampton*, the Fifth Circuit considered a case in which the prosecutor made the following remarks during closing argument:

> Speaking about the government trying to hide things by the way, ladies and gentlemen, the government provided every bit of evidence to the defense, they can present whatever they want. They have an opportunity, they don't have to, but they have the opportunity.

158 F.3d at 259. Counsel for the defendant objected to the prosecutor's remarks on the grounds that the prosecutor had expressly commented on the defendant's decision not to testify. *Id.* In response to the defendant's objection, the trial judge "reminded the jury that, as he had told them in voir dire, that the defendants were not required to prove anything and that the government must prove their guilt beyond a reasonable doubt." *Id.* at 259-60. In holding that the prosecutor's remarks did not violate the defendants Fifth Amendment rights, the Fifth Circuit noted that the defendant had failed to show "that the prosecution's statement had any effect whatsoever on the jury." *Id.* at 260. With respect to the curative effect of the instruction, the court further noted that "the trial judge specifically instructed the jury, immediately following the prosecutor's remarks, that the burden of proof rested on the government and that the defense had no such equivalent burden. Such an instruction cures any alleged harm resulting from the prosecutor's remarks." *Id.* (citing *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1179 (5th Cir. 1993) (holding that a prosecutor's remark which allegedly violated the defendant's Fifth Amendment rights was cured by the trial judge's instruction that "[t]he defendant has no burden at all, and the jury will recognize that. The defendant does not have to prove his innocence…")).

Turning to the instant case, the Court finds that the prosecutor's statements during closing argument did not violate the Defendants' Fifth Amendment rights. Even assuming that the prosecutor's statements were such that the jury would take them to be a commentary on the Defendants' decision not to testify, the comments did not affect the fairness of the trial such that

15

a new trial or a judgment of acquittal would be warranted.  In addition, the Court issued an

appropriate curative instruction to the jury.  Like the curative instruction in *Lampton*, which

served to remind the jury that the defendants were not required to prove anything and that the

government was required to prove their guilt beyond a reasonable doubt, the curative instruction

in the instant case informed the jurors that the government always has the burden to prove every

essential element and that the defendants need not prove anything.   Furthermore, the Court

observed from the jury's demeanor that the jury had understood the instruction and that the

instruction had been "well received."  In addition, the Court delivered a preliminary instruction

to the jury regarding the Defendants' right not to testify prior to trial and again delivered a

similar instruction during the jury charges.  As a result, the Court finds that the prosecutor's

remarks during closing argument do not warrant a judgment of acquittal or a new trial.

### 7.    Denial of Requested Jury Instructions

Seventh, Scheur argues that the Court erred by denying three proposed jury instructions

that Scheur requested to clarify or define various legal points.  At the close of trial, Scheur

requested, among other instructions: (1) a legal instruction explaining that there had been no

codification of the NAIC statutory accounting rules in Louisiana at the time of the alleged

offenses and that the LDOI had discretion to permit practices that fell outside of those rules; (2)

an instruction on the statutory definition of an "admitted asset" under Louisiana law; and (3) a

legal instruction regarding collective knowledge.

"The trial court may decline a suggested charge which incorrectly states the law, is

without foundation in the evidence, or is stated elsewhere in the instructions."  *United States v.

Robinson*, 700 F.2d 205, 211 (5th Cir. 1983).  "The refusal to give a requested jury charge is

reversible only if the instruction was substantially correct, was not substantially covered in the charge delivered to the jury, and it concerned an important issue so that failure to give it seriously impaired defendant's ability to present a given defense." *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992).  Upon review, the Court finds that there was no error in denying the requested jury charges.

Scheur first requested that the Court instruct the jury that, as a matter of law, the LDOI had not adopted the NAIC guidelines and was therefore free to permit accounting practices outside of those guidelines.  This instruction would have required the Court to make a factual determination that more appropriately belonged within the scope of the jury's deliberations.  The Defendants were free to establish on cross-examination that the NAIC guidelines were not codified by the LDOI during the relevant timeframe and that the LDOI had discretion to permit reporting practices that departed from those guidelines.  Accordingly, the Court did not err in declining to issue this instruction.

Scheur's second proposed instruction concerned the statutory definition of an "admitted asset" under Louisiana law.  Scheur's proposed instruction, however, was misleading because it contained only a partial and incomplete definition of "admitted asset," neglecting to address important distinctions present within the Louisiana statute.  For example, although the statute sets out twelve types of admitted assets, the Defendant's proposed instruction contained only one of the twelve types.  *See* LA. REV. STAT. ANN. § 22:855(12) ("For purposes of this Part, the following assets … shall be known as admitted assets: … (12) Other assets, not inconsistent with the provisions of this Section, deemed by the commissioner to be available for the payment of losses and claims, at values to be determined by him."); *see also* Defendant Barry Scheur's

Additional Proposed Jury Instructions, at 2 ("Under La. R.S. 22:855(12), Admitted Assets

include assets, not inconsistent with the provisions of Section 22:855, deemed by the

commissioner to be available for the payment of losses and claims, at values to be determined by

him."). In addition, the statute also lists several types of assets that cannot be considered

admitted assets. *See* LA. REV. STAT. ANN. § 22:856. The Court declined to issue the instruction

because it did not accurately state the law and could have easily led to juror confusion.

Scheur's third proposed instruction concerned the legal meaning of collective knowledge

in the context of institutional agencies such as the LDOI. Scheur requested that the Court

instruct the jury that "[t]he knowledge of an institutional entity such as the [LDOI] consists of

the collective knowledge of all the employees and agents of the institution. Therefore, if one

employee of the LDOI had knowledge of a fact, the LDOI as an institution had knowledge of

that fact." *See* Defendant Barry Scheur's Additional Proposed Jury Instructions, at 2. According

to Scheur, the instruction was necessary because "the Government had the burden of proving that

the defendants defrauded the LDOI." In fact, the Government had the burden of proving the

existence of "a scheme and artifice to defraud and obtain money and property, specifically from

The Oath, The Oath's insureds, and The Oath's medical service providers." (Third Superseding

Indictment ¶ 19). The Fifth Circuit Criminal Pattern Jury Instructions regarding mail fraud are

clear that "[it] is not necessary that the government prove all of the details alleged in the

indictment concerning the precise nature and purpose of the scheme … or that the alleged

scheme actually succeeded in defrauding anyone…." *See* Fifth Circuit Criminal Pattern Jury

Instructions § 2.59. Rather, "[w]hat must be proved beyond a reasonable doubt is that the

defendant knowingly devised or intended to devise a scheme to defraud that was substantially the

same as the one alleged in the indictment ….”  *Id.*  As a result, the proposed instruction would have conflicted with other valid instructions directly addressing the elements of the crimes with which the Defendants were charged.  Because the proposed instruction might have confused the jury by calling into question the legal elements of the offenses at issue, the Court did not err in declining to issue the proposed instruction.

### 8.      Insufficient Evidence

Eighth, Scheur argues that the evidence is insufficient to sustain a conviction on the charges for which he was found guilty.  In particular, Scheur focuses on Count 14, which charges the Defendants with wire fraud in furtherance of the conspiracy by faxing a promissory note and corporate resolutions from The Oath’s office in New Orleans to the offices of a law firm in Ohio on December 10, 2001.  (Third Superseding Indictment ¶ 24.)  First, Scheur contends that evidence shows that the LDOI directed the Defendants to create the promissory note because The Oath had been placed under administrative supervision three months before the date on which the fax was sent.  Second, Scheur argues that, because the alleged conspiracy ended when The Oath was placed under administrative supervision, the actions alleged in Count 14 could not have been “in furtherance” of the conspiracy.

In considering a defendant’s motion for acquittal challenging the sufficiency of the evidence, the court must “determine whether the relevant evidence, viewed in a light most favorable to the Government, could be accepted by a reasonable-minded jury as adequate and sufficient to support the conclusions of the defendants’ guilt beyond a reasonable doubt.”  *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).  “All reasonable inferences which tend to

19

support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor." *Id.*

First, Scheur argues that the undisputed evidence shows that the LDOI instructed the Defendants to create and send the fraudulent documents. The Court disagrees. Tina Dunsford testified that she drafted the documents in question at the direction of the Defendants and that she based her work on the Defendants' misrepresentations concerning The Oath's finances. *See* Trial Transcript, May 2, 2008, Afternoon Session, p. 23-24 ("I drew up those documents because I was told that it was a loan back in April."). Further, the Government introduced evidence that Scheur sent Danette Bruno an email directly instructing her to assist in drawing up the documents and sending them to David Paragas, The Oath's outside counsel. *See* Government Exhibit 142 ("David Paragas is trying to help us get the state in La. to recognize the amount of my contributions to the Plan… Please put this together for me and forward to David."). Viewed in the light most favorable to the Government, this evidence supports the conclusion that the Defendants acted independently of the LDOI in creating and transmitting the fraudulent promissory note and corporate resolutions.

Second, Scheur argues that the undisputed evidence shows that the fax was, at most, a "cover-up" and was not done "in furtherance" of the alleged conspiracy. Scheur contends that the conspiracy ended on September 12, 2001, when the LDOI began exercising administrative supervision over The Oath, but the fraudulent note and resolutions were sent on December 10, 2001. Again, the Court disagrees with this characterization. Viewed in the light most favorable to the Government, the evidence suggests that the conspiracy to defraud The Oath, its medical providers and insureds was an ongoing conspiracy that included the events described in Count

20

14.  By sending the fraudulent promissory note and corporate resolutions to be filed with the LDOI, the Defendants were able to avoid paying back any of the premiums or benefits that they may have obtained over the course of the conspiracy.  Although the events described in Count 14 had the immediate effect of concealing the conspiracy from the LDOI, the jury could reasonably have determined that the fraud was also in furtherance of the conspiracy and was in fact a necessary part of the conspiracy.  *See United States v. Mann*, 161 F.3d 840, 859 (5th Cir. 1998) ("[C]oncealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the conspiracy.").  Accordingly, the Court finds that the jury's verdict is supported by the evidence.

### B.    Defendant Robert McMillan's Motion for Judgment of Acquittal and Motion for a New Trial

Defendant Robert McMillan argues that, because the evidence at trial does not support the jury's verdict, he should be granted a judgment of acquittal or a new trial.  First, McMillan asserts that the Government failed to establish that he had the specific intent to defraud The Oath, The Oath's insureds, or The Oath's medical service providers.  Second, McMillan argues that the evidence against him is insufficient to support a conviction, particularly with respect to Count 14.

First, McMillan argues that the Government did not offer proof that he intended to defraud The Oath, The Oath's medical service providers, or The Oath's insureds.  McMillan contends that Rodney Moyer's testimony shows that McMillan did not have the requisite intent to defraud The Oath or its insureds:

BY MR. LARSON:

Q. … pulling these opportunities together, it was not your intention to go out and participate in a federal felony, was it?
A: No.
Q: And it wasn't your intention to participate in a state felony, was it?
A: No, it was not.
Q: And these numbers weren't being pulled together to defraud the customers of The Oath, were they?
A: No.
Q: And they weren't being pulled together to defraud third-party health care providers, were they?
A: That was not the purpose, no.
Q: And as they were actually just being pulled together as part of the attempted turnaround of the corporation, right?
A: Yes.
Q: And the memo, those numbers weren't provided to Mr. Scheur for the purpose of enriching you, were they?
A: No.

*See* Trial Transcript, May 5, 2008, Morning Session, at 23.  As a result, McMillan argues that the

Government failed to show that he intended to defraud anyone—and, in fact, that the evidence

shows that he *did not* intend to defraud anyone.

As an initial matter, the Court notes that the Government was not required to put on

direct proof of McMillan's intent to defraud.  *See United States v. Prince*, 496 F.2d 1289, 1293

(5th Cir. 1974) ("[D]irect proof of … state of mind or participating in a criminal conspiracy is

not required … Intent, knowledge, and participation in a conspiracy may be inferred from the

activities of the parties and thus may be proved by circumstantial evidence…. [S]tate of mind

can rarely be established by other means.").  The Government provided evidence that The Oath

had insureds, that The Oath collected insurance premiums from those insureds, and that the

Defendants had conspired to inflate the value of The Oath's statutory reserves.  The jury could

reasonably infer from the evidence that the Defendants intended to defraud The Oath's insureds

in order to continue collecting premiums despite not meeting the minimum requirement for

statutory reserves.  It was not necessary for the Government to show that McMillan ever expressly stated his intent to defraud the insureds.

Further, the Court does not agree that Rodney Moyer's testimony in any way undermines the reasonableness of the jury's verdict.  Moyer was not competent to testify as to McMillan's intent or lack of intent.  Nevertheless, even if Moyer could accurately testify regarding whether McMillan intended to defraud The Oath's insureds, the jury would be free to disregard such testimony if it found that the weight of the evidence suggested otherwise.  The testimony of a single witness—indeed, the testimony of a witness who pled guilty to the very conspiracy charge at issue—cannot preclude the jury from finding that the weight of the evidence introduced at trial supports a guilty verdict as to another defendant.  The jury—and not Moyer—was the factfinder in this case.

Finally, McMillan argues that the evidence was insufficient to support a conviction against him as to Count 14.  For the same reasons set forth above with respect to Scheur's motion for acquittal as to Count 14, the Court finds that the evidence was sufficient to sustain the jury's verdict.  McMillan also argues that the Government did not introduce any evidence directly linking him to the fax transmission.  Again, however, McMillan misinterprets the Government's burden.  A defendant may "cause interstate wire communications to be used" without necessarily using those facilities directly.  *See* Fifth Circuit Criminal Pattern Jury Instruction § 2.60 (Wire Fraud).  All that is necessary is that the defendant "act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen."  *Id.*  A reasonable jury could determine from the evidence presented at trial that McMillan acted with the knowledge that his actions would lead to the use of wire

23

communications facilities in furtherance of the fraud.

**IV.     CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED that Defendant Barry Scheur's Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial (Rec. Doc. 319) and Defendant Robert McMillan's Motion for Judgment of Acquittal (Rec. Doc. 313) and Motion for a New Trial (Rec.Doc. 314) ARE DENIED.

New Orleans, Louisiana, this 10th day of November, 2008.

_____
UNITED STATES DISTRICT JUDGE