# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 07-169 |
| BARRY S. SCHEUR<br>ROBERT MCMILLAN | * | SECTION "L" (2) |

## ORDER & REASONS

Before the Court are Defendant Barry Scheur's Motion for Release on Bond Pending Appeal (Rec. Doc. 417) and Defendant Robert McMillan's Motion for Bail Pending Appeal (Rec. Doc. 408). The Court heard oral argument on both motions. For the following reasons, the motions are GRANTED.

## I.      BACKGROUND

Before addressing the substance of the instant motions, it is appropriate to provide a brief history of this case.[1] In November 2005, a grand jury indicted Barry Scheur, Robert McMillan, and Rodney Moyer on charges of mail fraud and conspiracy stemming from the failure of The Oath for Louisiana, Inc., a health maintenance organization previously engaged in the insurance

---

[1] For a more detailed history of the case, see the Court's earlier rulings. *See United States v. Scheur*, No. 07-169, 2008 WL 4889732 (E.D. La. Nov. 12, 2008) (denying motions for acquittal or in the alternative new trial); *United States v. Scheur*, 547 F. Supp. 2d 580 (E.D. La. 2008) (finding Defendant Scheur competent to stand trial); *United States v. Scheur*, No. 07-169, 2008 WL 490339 (E.D. La. Feb. 20, 2008) (resolving motions for bill of particulars and motions to strike surplusage from the indictment); *United States v. Scheur*, No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007) (denying motions to dismiss the "third superseding indictment"); *United States v. Scheur*, No. 05-304, 2007 WL 1063301 (E.D. La. Apr. 3, 2007) (dismissing the original indictment, superseding indictment, and second superseding indictment).

1

business in Louisiana. On February 17, 2006, the grand jury returned a superseding indictment which added an additional defendant, Danette Bruno, and several new charges. Six months later, on August 11, 2006, the grand jury returned a fourteen-count second superseding indictment charging the defendants with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, five counts of mail fraud in violation of 18 U.S.C. § 1341, and eight counts of wire fraud in violation of 18 U.S.C. § 1343.[2] The second superseding indictment also included a notice of forfeiture for any and all property which constitutes, or is derived from, proceeds traceable to the mail and wire fraud violations.

The government alleged that the defendants, who were principals and employees of The Oath, engaged in a conspiracy over several years to unjustly pay themselves approximately $6.1 million in management fees from the company. The government further alleged that the defendants maintained false and misleading accounting books and filed false and misleading financial statements with the Louisiana Department of Insurance to hide their activities. In April 2002, with its liabilities allegedly exceeding its assets by approximately $45 million, The Oath was placed in receivership by the Louisiana Department of Insurance and was eventually liquidated.[3]

On April 3, 2007, in light of the United States Supreme Court's holding in *Cleveland v.*

---

[2] Danette Bruno was not named in count two and, thus, was only charged with four counts of mail fraud.

[3] The fallout from the failure of The Oath has been the subject of civil litigation as well. *See Egan Nursing Servs., Inc. v. Scheur*, No. 02-2564, 2003 WL 1701854 (E.D. La. Mar. 26, 2003); *Egan Nursing Servs., Inc. v. Scheur*, No. 02-2564, 2003 WL 1701790 (E.D. La. Mar. 26, 2003); *Egan Nursing Servs., Inc. v. Scheur*, No. 02-2564, 2003 WL 1701705 (E.D. La. Mar. 26, 2003); *Egan Nursing Servs., Inc. v. Scheur*, No. 02-2564, 2003 WL 1699355 (E.D. La. Mar. 26, 2003).

*United States*, 531 U.S. 12 (2000), namely that the object of a federal fraud scheme must be property in the hands of the victim, the Court dismissed all counts of the indictment, the superseding indictment, and the second superseding indictment for failure to state offenses against the United States in accordance with the named mail and wire fraud statutes. *See United States v. Scheur*, No. 05-304, 2007 WL 1063301 (E.D. La. Apr. 3, 2007).[4] On April 27, 2007, following the dismissal of all previous charges and within the six-month period set forth in 18 U.S.C. § 3288, the grand jury returned what the Government termed a "third superseding indictment."[5] The third superseding indictment charged that the Defendants did

> knowingly and willfully devise and intend to devise a scheme and artifice to defraud and obtain money and property, specifically from The Oath, The Oath's insureds, and The Oath's medical service providers, by means of material false and fraudulent pretenses, representations and promises, by misleading the LDOI into believing that The Oath was meeting the statutorily required minimum net worth of $3 million, and thereby unlawfully enriching themselves through the continued operation of the Oath, specifically by continuing to collect premiums from the insureds and continuing to collect management fees from The Oath, during a time when The Oath was not meeting the statutorily required minimum net worth.

The Court subsequently found that the third superseding indictment fulfilled the requirements set forth in *Cleveland* without impermissibly broadening the original charges. *See United States v. Scheur*, No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007).

After numerous continuances and the resolution of several pretrial motions, all four

---

[4] The Court had previously refused to dismiss the charges on this ground. *See United States v. Scheur*, No. 05-304, 2007 WL 29065 (E.D. La. Jan. 3, 2007).

[5] Because all previous indictments had been dismissed and criminal action number 05-304 had been closed, the Court treated this third superseding indictment as a "new indictment" and directed the clerk's office to open the instant case file, which was assigned criminal action number 07-169.

defendants were scheduled to go to trial jointly on April 28, 2008. On the eve of trial, Defendant Rodney Moyer pled guilty to Count 1 of the third superseding indictment. The other Defendants–Barry Scheur, Robert McMillan, and Danette Bruno–proceeded to trial as scheduled on April 28, 2008. On May 12th, the jury returned a verdict, finding Defendant Barry Scheur Guilty as to Counts 1, 2, 5, 6, and 11 through 14; Defendant Robert McMillan Guilty as to Counts 1, 5, and 14; and Defendant Danette Bruno Not Guilty as to all Counts.

## II.     PRESENT MOTIONS

Defendants Barry Scheur and Robert McMillan have now moved for release on bond pending appeal. The Defendants contend that there are numerous substantial issues of fact and law that would warrant either a judgment of acquittal or a new trial if resolved in their favor on appeal. The Defendants argue that issues related to the indictment, the sufficiency of the evidence, prosecutorial remarks made during closing arguments, and improper expert testimony all raise substantial questions of law or fact warranting bond pending appeal. In addition, Defendant Scheur individually raises the issue of due process and special needs as it applies to his blindness and competency to stand trial as an additional substantial issue of law or fact to be decided on appeal. In response, the Government opposes both motions and argues that the Court has already ruled several times that the numerous issues raised by the Defendants are without merit. Accordingly, the Government contends that bail pending appeal is inappropriate in this case.

## III.    LAW AND ANALYSIS

Applications for bail pending appeal are governed by 18 U.S.C. § 3143(b), commonly referred to as the Bail Reform Act of 1984. Although Congress did not intend to eliminate bail

4

pending appeal by passing 18 U.S.C. § 3143(b), Congress did intend to "substantially limit" its availability. *See United States v. Valera-Elizondo*, 761 F.2d 1020, 1024 (5th Cir. 1985). The Bail Reform Act therefore creates a presumption against bail pending appeal because "the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption." *Id.* Under Fifth Circuit precedent, a defendant seeking release on bond pending appeal must show that:

> (1) he is not likely to flee or pose a danger to the safety of any other person or the community;
>
> (2) the appeal is not for the purpose of delay;
>
> (3) the appeal raises a substantial question of law or fact; and
>
> (4) if the substantial question is determined favorably for the defendant on appeal, that decision would likely result in reversal or an order for a new trial on all counts for which imprisonment has been imposed.

*Id.* It is important to note, however, that the remedy is not conditioned on a district court's finding that it committed error. *Id.* Conditioning bail pending appeal on a finding of reversible error would effectively render the statute moot because such errors are properly dealt with in post-trial motions. *Id.* Although many significant issues were raised in the instant case, many of which were issues of first impression, this Court felt that these issues were sufficiently, efficiently, and accurately addressed and properly resolved under present precedent. But confidence of the trial court in its rulings does not resolve the current motions.

The first two prongs of the analysis require the court to determine whether the defendants are dangerous, pose a threat to society, are likely to flee, or are taking an appeal for purposes of delay. The office of Pretrial Services has advised the Court that the Defendants have fully complied with all terms of their bond throughout the lengthy proceedings in this case. The Court

therefore finds that the Defendants are not likely to flee and do not pose a danger to the safety of any other person or the community. Further, given the unique circumstances of this case, it is clear that the Defendants are not appealing merely to delay the proceedings. Accordingly, the Court finds that the Defendants have satisfied the first two prongs of the analysis.

The third and fourth prongs of the analysis require an inquiry into whether the defendants raise a substantial question of law or fact that would likely result in a new trial or judgment of acquittal if resolved in their favor on appeal. The Fifth Circuit has explained that an issue presents a substantial question of law or fact if the issue raises a "substantial doubt (not merely a fair doubt) as to the outcome of its resolution." *Id.* In other words, a "substantial question" is a "close question, or one that very well could be decided the other way." *Id.* (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Although the absence of controlling precedent is a significant factor for a district court to consider in determining whether a question is "substantial," it is not the only factor. *Id.* Indeed, "there might be no precedent in [the Fifth Circuit], but there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." *Id.* (citing *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985)). It is not enough, however, that a defendant merely raises a substantial question of law or fact; the substantial question must also be one that would "likely" result in a new trial or a judgment of acquittal if it were to be resolved in the defendant's favor on appeal. Accordingly, the Fifth Circuit has clarified that the correct inquiry is whether, "if error is found, it will so taint the conviction that it is *more probable than not* that reversal will be required." *Id.*

The Defendants contend that several issues related to the indictment–including whether the indictment was time-barred by the statute of limitations–raise substantial questions of law

6

likely to result in a judgment of acquittal or new trial if resolved in their favor. On April 3, 2007, the Court dismissed the initial three indictments against the Defendants after finding that the indictments failed to comply with the requirements set forth in *Cleveland*. The Government then re-indicted the Defendants on April 27, 2007, alleging that the Defendants misled the LDOI in order to defraud The Oath, The Oath's insureds, and The Oath's medical service providers. Although the statute of limitations had run on the underlying allegations, the Court held that the indictment was timely filed due to the protective six-month grace period set forth in 18 U.S.C. § 3288. *See United States v. Scheur*, No. 07-169, 2007 WL 2726083 (E.D. La. Sept. 17, 2007) (denying motions to dismiss the third superseding indictment).

There is, however, a substantial question of law as to whether, by refiling the indictment consistent with the requirements set forth in *Cleveland* [6] and alleging additional victims including The Oath, its insureds, and its medical service providers, the Government substantially broadened the scope of the indictment, thus removing the six-month grace period set forth in 18 U.S.C. § 3288. As an initial matter, the Court feels confident in its earlier ruling that the third superseding indictment did not substantially broaden the charges and was therefore timely filed. The correct analysis, however, involves determining not whether the earlier ruling was made in error but whether the issue raises a substantial question of law that, if resolved in the Defendants' favor, would likely merit a new trial or a judgment of acquittal. To that end, the Court finds that the issues related to the indictment present substantial questions of law for which there is no directly controlling precedent. If the indictment is found to be defective or

---

[6] It should be noted, however, that the Defendants also contend that the third superseding failed to satisfy the requirements of *Cleveland*. This is an additional issue that presents substantial questions on appeal.

7

barred by the statute of limitations, the Defendants will be entitled to a new trial or a judgment of acquittal.

The Defendants also contend that statements made by the prosecutor during closing argument raise an additional substantial question of law that would likely result in a new trial if it were decided in their favor on appeal. The Defendants chose not to testify during the trial, and, following the Defendants' closing arguments, the prosecutor remarked during rebuttal that "[n]ot one of these defendants is stepping up and saying they did anything wrong." Trial Transcript, May 7, 2008, Morning Session, at 77. Immediately following the prosecutor's statement, the Defendants moved for a mistrial or a judgment of acquittal and the Court denied the request. The Court then issued a curative instruction and reminded the jurors that "no defendant need testify, they need put on no evidence, they need not put on anything at all. It is always the government's burden to prove every essential element and the defendant need to prove nothing." *Id.* at 78-79. The prosecutor later attempted to rephrase his remarks, stating that "[w]hat I meant to say here is that there is blame being placed at the [feet] of everybody in this courtroom but there's no responsibility at all being taken on behalf of the defendants ... The defense counsel, not the defendants, the defense counsel stepped up to this podium and blamed everybody in this courtroom." *Id.* at 79.

In denying the Defendants' post-trial motions for a new trial or in the alternative a judgment of acquittal, the Court held that the prosecutor's remarks did not violate the Defendants' Fifth Amendment rights. *See United States v. Scheur*, No. 07-169, 2008 WL 4889732 (E.D. La. Nov. 12, 2008). The Court further explained that, even if the statements were such that the jury could interpret them as a commentary on the Defendants' decision not to

testify, the comments did not affect the fairness of the trial and, in addition, the Court had issued an appropriate curative instruction and reinforced the instruction with appropriate jury charges to alleviate any potential harm caused by the remarks.

Given the unique circumstances of the case, however, the Court finds that the prosecutor's remarks do at least raise a substantial question of law that would warrant a new trial if decided in the Defendants' favor. Again, the Court stands by the soundness of its earlier ruling that the prosecutor's comments did not violate the Defendants' Fifth Amendment rights and that any prejudice was removed by the Court's actions. As previously stated above, however, the correct analysis does not involve an inquiry into whether the Court's earlier ruling was in error, but rather whether the issue presents a substantial question likely to result in a new trial if decided in the Defendants' favor. Under Fifth Circuit precedent, it is well settled that "a prosecutor may not comment directly or indirectly on a defendant's failure to testify." *United States v. Fierro*, 38 F.3d 761, 771 (5th Cir. 1994). In a case such as this, where the jurors deliberated for several days, sent a number of written notes to the Court during deliberations seeking clarification and expressing difficulty in reaching agreement, and then ultimately delivered a split verdict, the prosecutor's remarks present an additional substantial issue further supporting the Court's decision to grant the Defendants' motions for bail pending appeal.

Although the Court feels confident in its earlier rulings, the Court acknowledges that, if any of these issues are decided in the Defendants' favor, the Defendants could potentially serve a considerable portion of their sentences prior to receiving the appellate court's decision. Two other concerns factor into the Court's action. First, the sentences (Scheur, 20 months; McMillan, 13 months) would be served in whole or large part by the time the appeal is resolved. A reversal

would mean that the Defendants' incarceration was improper and may not count as time served even if they were retried and convicted.  Second, Scheur is blind and there are limited facilities to house him; McMillan's spouse died shortly before trial and he is the sole guardian for his two young children.  Accordingly, the Court finds that the interests of justice are best served by permitting Scheur, who is completely blind, and McMillan, who is the sole caretaker for his two young children, to remain on bond pending appeal.

IV. **CONCLUSION**

For all of the reasons stated above, in addition to those expressed during oral argument, the Defendants' motions for bail pending appeal ARE GRANTED.  The Court appreciates that this is an extraordinary remedy and does not grant the Defendants' motions lightly.  Accordingly, the Court will closely monitor the Defendants' compliance with the terms of their bonds, and, should the Court receive notice that the Defendants have violated any of the terms of their release, the Court will not delay in taking the appropriate steps to revoke the bond.

New Orleans, Louisiana, this 6th day of January, 2009.

_____
UNITED STATES DISTRICT JUDGE